UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEONARINE KHAM,<br><br>        Petitioner,<br><br>    v.<br><br>TONYA ANDREWS, et al.,<br><br>        Respondents. | Case No.: 1:26-cv-01698-KES-SKO (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1]<br><br>[10-DAY OBJECTION DEADLINE] |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on March 2, 2026. (Doc. 1.)  On March 3, 2026, the Court issued an order directing Respondent's to show cause whether there were any factual or legal issues in this case that distinguished it from the Court's prior orders in similar cases, including: Vu v. Noem, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 2939179 (E.D. Cal. Oct. 15, 2025); Nguyen v. Warden, No. 2:25-CV-03297-SKO (HC), 2026 WL 72110 (E.D. Cal. Jan. 9, 2026); Duong v. Charles, No. 1:25-CV-01375-SKO (HC), 2025 WL 3055188 (E.D. Cal. Oct. 31, 2025). (Doc. 4.) On March 9, 2026, Respondent filed a response to the petition. (Doc. 6.)

1

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his continued detention violates his due process rights under the Fifth Amendment because there is no significant likelihood of removal in the reasonably foreseeable future. He claims that his potential removal to a third country violates his constitutional rights and is punitive. Finally, he claims his re-detention is unlawful because ICE failed to comply with its own regulations prior to revoking his release.

For the reasons discussed below, the Court will recommend the petition be GRANTED.

**I.      BACKGROUND**

Petitioner was born in Thailand, (Doc. 1 at 2), and is a citizen and national of Cambodia (Doc. 6 at 13).  On or about May 15, 1985, Petitioner was admitted to the United States as a refugee. (Doc. 6 at 6.)

On May 25, 2004, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner, charging him with removability under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") for having been convicted of two crimes involving moral turpitude. (Id. at 6-7.) Petitioner was ordered removed to Thailand on June 8, 2004. (Id. at 7.)

Petitioner has a lengthy 24-page rap sheet for numerous crimes committed over the past 25 years, including two convictions for receiving stolen property (motor vehicle), and fourteen (14) convictions on firearm, controlled substance, and domestic battery charges. (Doc. 6 at 30-54.)  His most recent conviction occurred on January 7, 2026, for battery on a spouse. (Doc. 6 at 54.)

As a result of his most recent conviction, on January 8, 2026, Petitioner was taken into ICE custody. (Id.) On February 2, 2026, ICE submitted a formal request for travel document to Thailand. (Id.) The request was subsequently denied. (Id.)

On March 9, 2026, DHS filed with the Immigration Court a written motion to reopen removal proceedings in order to remove Petitioner to Cambodia, as there is evidence Petitioner is a citizen of Cambodia. (Id.) The motion includes also requests the Immigration Court to reopen proceedings for Petitioner to apply for relief or protection of removal to Cambodia. (Id.)

Petitioner is subject to a final order of removal, and he has been detained since January 8, 2026. As Petitioner is subject to a final order of removal, the parties acknowledge that Petitioner's detention is governed by 8 U.S.C. § 1231. (Docs. 1 at 8; 6 at 1.)

**II.     DISCUSSION**

A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

B.  Revocation of Release on Supervision

In claim four of the petition, Petitioner alleges the Government failed to comply with its own regulations, (8 C.F.R. § 241.13), when it re-detained Petitioner on January 8, 2026. (Doc. 1 at 17.) In the Court's order directing Respondents to show cause, the Court specifically noted that it had addressed this claim on previous occasions in specified cases and directed Respondents to advise whether the instant case was different. (Doc. 4.) In their response, Respondents fail to address the issue, acknowledging only that Petitioner was "taken into custody." (Doc. 6 at 2.) The balance of the response addresses Petitioner's claim of indefinite detention.

Upon review, like the cases identified in the Court's previous order, the Court finds that the Government has violated its own regulation.  Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances."[1] § 241.13(i)(2).  The Government apparently relies on Petitioner's most recent conviction as its basis for arrest.  However, there is no indication that any determination was made that circumstances had changed such that Petitioner's removal to Thailand was now reasonably foreseeable. In fact, Respondents only attempted to obtain a travel document to Thailand on February 2, 2026, nearly a month after Petitioner was detained. Thus, there is no evidence that any change in circumstance determination was made, much less *before* the removable alien had his release revoked, as is required under the statute.  Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); Nguyen, v. Noem, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)).  To make matters worse, Thailand rejected the request for a travel document finding Petitioner ineligible for Thai citizenship and repatriation. (Doc. 6 at 74.) The Government has apparently submitted a request to reopen removal proceedings to effectuate removal to Cambodia after discovering evidence that Petitioner may be a citizen of Cambodia. However, it is unclear if and when removal proceedings will be reopened. Moreover, there is no certainty that Petitioner will be ordered removed to Cambodia. Finally, this process must yet play out before the Government can even request a travel document to Cambodia. Then, there is the uncertainty whether Cambodia will grant a travel document to Petitioner.

---

[1] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release."  But nowhere in the record does the Government purport to rely on this authority for the October 16, 2025, revocation of Petitioner's release, so the Court will not address this provision.

Thus, the record is bereft of any changed circumstances. In any case, the record is clear that any changed circumstances determination could not have been made, if at all, until well after Petitioner was re-detained on January 8, 2026. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2).  See, e.g., Sphabmixay, 2025 WL 3034071, at *2 (finding the same).

Second, even if the Government had determined, based on legally sufficient "changed circumstances," the Court finds the Government also violated section 241.13(i)(3)'s notice requirement.  Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section.  To revoke a removable alien's release under section 241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); see Tran, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). Here, there is no evidence that Petitioner was provided with written notice of the Government's reasons for any determination it had made that circumstances had changed such that removal was now reasonably foreseeable. The Government's untimely actions fail to comport with the requirements of section 241.13 and Petitioner's due process rights.

Finally, even if the Court found the Government had made a legally sufficient determination of "changed circumstances" and that the Notice was sufficient under section 241.13(i)(3), the Court finds the Government also violated section 241.13(i)(3)'s opportunity to be heard requirement.  In addition to the notice provision, section 241.13(i)(3) requires ICE to "promptly," after re-detainment, conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation."  There is no evidence that any such interview was provided.  The Court, therefore, again finds the Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3).  See Tran, 2025 WL 3005347, at *3 (finding the same); see also Grannis v. Ordean, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); Niz-Chavez v. Garland, 593 U.S. 155, 172 (2021) ("If men must turn

square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

As previously noted, the Government's response does not address Petitioner's argument that his due process rights were violated by the Government failing to abide by section 241.13's requirements. Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).  Even if the Petitioner was ordered removed to Cambodia and the Government were to obtain a travel document from Cambodia subsequent to re-detainment, Petitioner would still be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest.  Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances.").  The Court should follow suit.

Because the Government was required to, but failed to comply with section 241.13(i) when it revoked Petitioner's supervised release on January 8, 2026, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions. The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" GoTo.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)); see Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing McCormack v. Hiedeman, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Petitioner had been on supervised release for over twenty years until he was re-detained. Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before his re-detention on January 8, 2026. See Doe, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly

unconstitutional action in rearresting Petitioner without a hearing."); Domingo-Ros v. Archambeault, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558  (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); Pinchi v. Noem, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the Court recommends that Petitioner be granted immediate release to return to the status quo.

**RECOMMENDATION**

Accordingly, the Court hereby RECOMMENDS that the Petition for Writ of Habeas Corpus be GRANTED, the Government be ORDERED to immediately release Petitioner according to the conditions of release that were in effect before his January 6, 2026, re-detainment, and the Government be ENJOINED and RESTRAINED from re-detaining Petitioner unless they obtain a travel document and until they follow the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit

Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **March 13, 2026**                      /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE